UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - -
                                    :
CLYDE JAMES GILLESPIE, JR.,         :
        Plaintiff,                  :
                                    :
        v.                          :    C.A. No. 10-188 S
                                    :
A.T. WALL, et al.,                  :
        Defendants.                 :
                                    :
- - - - - - - - - - - - - - - -

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before this Court is a complaint (the "Complaint", ECF No. 1) filed <u>pro se</u> by plaintiff Clyde James Gillespie, Jr., an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, seeking declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983 and related statutes, based on certain conditions of his confinement. This Court has screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A. This Court finds that the Complaint fails to state a claim upon which relief may be granted and should be dismissed. In view of this, Plaintiff's application for leave to proceed <u>in forma pauperis</u> (ECF No. 2) and his motion for appointment of counsel (ECF No. 3) will be denied as moot.

I.   BACKGROUND

   A.   Named Defendants.

   The following defendants are named in the Complaint:  A.T.
Wall, Director of the Rhode Island Department of Corrections
("RIDOC"); Nancy Bailey, RIDOC Operations Director; James
Weeden, Warden for the High Security Center ("HSC"), the maximum
security unit of the ACI; Michelle Auger, Deputy Warden for the
HSC; Paulina Marcussen, RIDOC Director of Medical Services;
Eddie Souza, a Correctional Officer in charge of the prison
library services; and Correctional Officers Robert Dennette and
Brian Duaray.  Plaintiff alleges that at all relevant times all
Defendants acted under color of state law.

   B.   Allegations[1]

   The Complaint alleges that Defendants James Weeden and
Michele Auger have permitted the following:

- Plaintiff has been "subjected to very bad unsanitary
   living conditions," including shower areas "smelling
   of bodily human waste" and urine, inadequate air
   ventilation and broken showerheads in showers.
   (Compl. 10, 16, 19.)[2]

---

[1] Unless otherwise stated, the conditions allegedly existed
while Plaintiff was housed in the HSC from August 18, 2008
through the filing of his Complaint.

[2] Complaint page number references are to docket pagination.

- Inadequate heat and chipped lead paint on the air vents in his prison cell. (<u>Id.</u> at 10.)

- Plaintiff has been housed under unsafe fire conditions and building code violations in the HSC and officials have "no proper prompt remedy for the saf[e]ty of plaintiff;" there are no fire sprinkler systems or chemical smoke detectors in the living quarters; and Defendants Wall and Bailey have permitted these unsafe fire conditions and building code violations to continue. (<u>Id.</u> at 10-11, 15, 19.)

Plaintiff alleges that he complained of the foregoing conditions numerous times but has not received any response or relief. (<u>Id.</u> at 16-17.)

Plaintiff further alleges that Defendant Paulina Marcussen has allowed her medical subordinates to deny Plaintiff proper medical services without interruption, delay, or input by non-medical prison personnel. (<u>Id.</u> at 8, 11, 17.)

Defendants Wall, Bailey, Weeden and Auger permitted the denial of proper food services as follows:

- Food portions served at the prison are "child-size[d] portions" and insufficient for Plaintiff's personal needs; the undersized portions are served in order to keep the inmates underweight and weak and thus easier to discipline.

- The food handling is unsanitary, as the serving trays have cracks in which dishwashing chemicals are trapped during washing and cleaning, potentially contaminating the food. (Id. at 9, 11, 18.)

- Defendants Duaray and Dennette have unreasonably obstructed, destroyed and delayed Plaintiff's incoming mail and have "obstructed and open[ed]" in a retaliatory fashion his outgoing mail. (Id. at 9-10, 18, 21.) Further, Defendants Wall, Bailey, Weeden and Auger have allowed their subordinates to tamper with Plaintiff's mail despite his complaints regarding the same. (Id. at 12, 18.)

- Defendants Wall, Bailey, Weeden and Auger have allowed their subordinates to deprive Plaintiff of "access to the courts or court officials" and denied him "proper prompt legal services and proper materials to petition the courts." (Id. at 10, 20.) Defendant Souza has deprived Plaintiff of proper access to available legal materials and supplies, including photocopiers and typewriters. (Id. at 10, 20-21.)

- Defendants Wall, Bailey and Weeden have denied Plaintiff access to religious privileges and religious services on C-status or solitary status, while HSC

prisoners on B-status are allowed religious privileges. (Id. at 13.)

- Defendants Wall, Bailey and Weeden have denied Plaintiff, while on solitary status, phone privileges, including calls to attorneys or government officials, and visits from friends and relatives, even though other similarly-situated inmates have such phone and visiting privileges. (Id. at 13, 14.)

- Plaintiff has also been denied proper recreation services (unspecified) and the same recreation as other prisoners "when [the] weather is bad." (Id. at 13, 15.)

C. Exhaustion of Administrative Remedies and Relief Sought

Plaintiff alleges that he complained to prison authorities concerning the above conditions on September 21 and 28, 2009 and March 9, 2010 but prison officials refused to remedy them. (Id. at 11, 12, 22.) He alleges that Defendants have violated his rights under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution as well as his rights under the Rhode Island Constitution.[3] (Id. at 22.) He seeks

---

[3] For purposes of this § 1915 screening, the Court assumes that Plaintiff's rights under the Rhode Island Constitution are co-extensive with his rights under the United States Constitution. See Olsen v. Town of Westerly, No. 03-245, 2006 WL 997716, at *3 (D.R.I. Apr. 17, 2006) ("Rhode Island's

declaratory and injunctive relief and compensatory and punitive damages against all Defendants.

II. DISCUSSION

A. Screening under § 1915(e)(2) and § 1915A

In connection with proceedings in forma pauperis, § 1915(e)(2) instructs courts to dismiss a complaint at any time if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, § 1915A directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and to dismiss the complaint, or any portion thereof, for reasons identical to those set forth in § 1915(e)(2). 28 U.S.C. §§ 1915A (a) and (b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a Rule 12(b)(6) motion. Fridman v. City of New York, 195 F. Supp. 2d 534, 538 (S.D.N.Y. 2002); Pelumi v. Landry, No. 08-107, 2008 WL 2660968, at *2 (D.R.I. June 30, 2008). In making this determination, the Court must accept Plaintiff's allegations as true and construe them in the light most favorable to Plaintiff; although the Court need not credit bald assertions or

constitutional protections of due process and equal protection are similar to those provided under the Fourteenth Amendment of the United States Constitution.") (citing Kleczek v. Rhode Island Interscholastic League, Inc., 612 A.2d 734, 740 (R.I. 1992)).

unverifiable conclusions. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009). Further, the Court must review pleadings of a <u>pro se</u> plaintiff liberally. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).

A complaint fails to state a claim for which relief may be granted if the factual allegations fail to "raise [the plaintiff's] right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). That is, the complaint must allege sufficient facts to show that the plaintiff has a plausible entitlement to relief. <u>Iqbal</u>, 129 S. Ct. at 1949-51.

B.  Legal Standard Under Section 1983

Section 1983 requires "three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action." <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009).

C.  Denial of Religious Privileges

Gillespie claims that Defendants Wall, Bailey and Weeden have denied him "relig[i]ous privileges" and "relig[i]ous" services while he was in solitary confinement in cell block C and that inmates in cell block B are permitted such services. (Compl. 13.)

In <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987), the Supreme Court affirmed that, although prisoners do not

abandon their constitutional rights at the prison door, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Accord Turner v. Safley, 482 U.S. 78, 84 (1987).

Here, Plaintiff simply alleges the denial of religious services and privileges and nothing more. He provides no details as to the nature and scope of these religious "privileges" or "services," how often they have been denied, and what, if any, reasons were given for that denial. His allegation that Cell B inmates have religious privileges likewise provides no details or supporting facts.

Plaintiff's barebones allegations on this claim are conclusory and fail to show how "the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006). Put another way, the allegations fail to state "sufficient facts to show that he has a plausible entitlement to relief." Sanchez, 590 F.3d at 41 (citing Iqbal, 129 S. Ct. at 1949). Thus, they fail to state a claim on which relief may be granted.[4]

_____

[4] In view of this determination, this Court need not engage in the four-prong analysis set forth in Turner to evaluate whether a prison regulation or practice is reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89-91 (1987). Here, Plaintiff has not alleged that the denial of religious services was pursuant to any specific prison

D.   Conditions of Confinement

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials must provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." Id. (citation omitted). To state an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he was forced to endure "extreme deprivations," and a subjective component, that the defendant acted with "deliberate indifference" to such conditions. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

With respect to the objective component, "[t]he Constitution . . . 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S.

---

regulation or policy. Similarly, the complaint fails to state a claim under section 3 of the Protection of Religious Exercise of Institutionalized Persons, 42 U.S.C. § 2000cc-1 et seq., as Plaintiff's sparse allegations do not show how Defendants have imposed "a substantial burden" on the exercise of his religious rights.

294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)).  With respect to the subjective element, the plaintiff must plead facts indicating that the defendant was aware of and consciously disregarded a serious risk of substantial harm to the plaintiff.  Farmer, 511 U.S. at 826.

Here, plaintiff alleges several distinct conditions-of-confinement claims, which are discussed seriatim.

1.  Fire Safety and Building Code Violations

Plaintiff alleges that Maximum and High Security housing units do not have sprinkler systems or smoke detectors in or around inmate cells.  He further alleges that the prison is in violation of the Rhode Island fire safety code and building code (although he does not identify specific provisions).  Plaintiff names Defendants Weeden and Auger as being responsible for fire safety and alleges that these Defendants knew of these conditions throughout Plaintiff's period of confinement. (Compl. 19.)

Here, although Plaintiff states that the High Security Center does not have sprinkler systems or smoke detectors, he does not allege facts showing that the alleged inadequacies in the prison's fire prevention system amounted to anything more than a "deviation from ideally safe conditions."  Santana v. Collazo, 714 F.2d 1172, 1183 (1st Cir. 1983).  For example, he does not allege that the prison lacks a comprehensive fire

safety plan, fire extinguishers, proper fire escapes, a fire alarm system, evacuation plans, fire drills, locking devices on cell doors, fire walls, or smoke containment capabilities in the ventilation systems. See, e.g., Hadix v. Johnson, 367 F.3d 513, 528-29 (6th Cir. 2004) (reviewing cases dealing with prison fire safety); Sowell v. Fair, 915 F.2d 1557, at *5 (1st Cir. 1990) (Table) (stating that prisoner's claim regarding inoperative smoke detectors failed to state Eighth Amendment claim).

In addition, his conclusory allegations that the HSC fails to follow fire code procedures are not supported by any specific facts showing substantial deviations from ideal conditions that amount to a constitutional violation. See Hadix, 367 F.3d at 529 (noting the need to show "the point at which certain fire safety deficiencies ceased being mere deficiencies and, instead, became constitutional violations").

As such, his allegations in this respect fall short of stating a viable claim.

### 2. Unsanitary Shower Conditions

Plaintiff's allegations concerning the overall cleanliness of the facility, including claims that the showers smelled of urine and human bodily waste, the shower heads were broken and the ventilation was inadequate are not sufficiently serious to satisfy the objective component of the Eighth Amendment test. Plaintiff does not allege that he suffered, or imminently will

suffer, any injury as a result of the conditions. See, e.g., Shrader v. White, 761 F.2d 975, 983-84 (4th Cir. 1985) (holding that prisoners' allegations including leaking ceilings and a shower area covered in rust, mold, and mildew were constitutionally insignificant); Flaherty v. Cunningham, No. 93-216, 1994 WL 485751, at *2 (D.N.H. Sept. 2, 1994) (dismissing inmates' Eighth Amendment claims regarding poor air quality and absence of fresh fruit, where inmates did not aver sufficient facts demonstrating present or potential future harm).

### 3. Building conditions

Similarly, Plaintiff's allegations concerning inadequate heating and chipped lead paint on the vents in prison cells fail to warrant relief. The allegations regarding cold temperatures do not show what harm, if any, he has suffered as a result. See, e.g., Nelson v. Hill, 211 Fed. App'x 88, 91 n.6 (3d Cir. 2006) (denying recovery where plaintiff complained of cold temperatures but failed to show that he was deprived of blankets or adequate clothing).

Nor does Plaintiff allege that he suffered, or imminently will suffer, any injury as a result of the vent conditions. See, e.g., Hunnewell v. Warden, Me. State Prison, 19 F.3d 7, at *3 (1st Cir. 1994) (Table) (holding that complaints that ventilation system blew dust and fibers into plaintiff's cell causing him to have headaches and a bloody nose did not allege

deprivations sufficiently serious to establish a cognizable Eighth Amendment claim); Oliver v. Powell, 250 F. Supp. 2d 593, 604 (E.D. Va. 2002) (holding that allegations that cell contained roaches, leaky toilets, peeling paint, and writing on the wall did not state a claim under the Eighth Amendment); Flaherty, 1994 WL 485751, at *2 (dismissing inmates' Eighth Amendment claims regarding poor air quality, where inmates did not aver sufficient facts demonstrating present or potential future harm). Thus, these allegations are insufficient to state a claim warranting relief.

4. Food Services

Plaintiff's allegations that his food portions are too small and that his food is at risk of contamination due to the chemical residue in the food trays fail to state a claim. Compare Chase v. Quick, 596 F. Supp. 33, 34 (D.R.I. 1984) (prisoner's Eighth Amendment claim alleging unsanitary eating conditions failed because plaintiff did not assert specific instances of hunger, food-poisoning, or malnutrition resulting from consumption of the food at ACI), with Day v. Norris, 219 Fed. App'x 608, at *1 (8th Cir. 2007) (plaintiff alleged loss of weight, fatigue and hunger pangs and mental anguish as a result of inadequate diet). Plaintiff's claim "does not rise to the 'serious deprivation of basic human needs' that offends the Eighth Amendment." Muniz v. Richardson, 371 Fed. App'x 905, at

*2 (10th Cir. 2010) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).

     5. Recreation

Similarly, Plaintiff's allegations that Defendants Wall, Bailey, and Weeden denied him "proper recreational services" fails to state a claim.[5] The Complaint provides no detail supporting Plaintiff's conclusory allegation that the recreation he was permitted was not "proper," and he does not state that his health suffered or was threatened as a result of Defendants' actions. <u>Cf.</u> <u>French v. Owens</u>, 777 F.2d 1250, 1255 (7th Cir. 1985) (holding that lack of exercise may rise to a constitutional violation in certain limited circumstances "where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened").

    E. Medical Services

Plaintiff claims that Defendant Marcussen has allowed her medical staff to deny proper medical attention for Plaintiff's specific needs and allowed non-medical correctional officers to invade doctor-patient confidentiality and delay treatment "in a retalition [sic] manner." (Compl. 11, 17.) He further alleges that Defendant Marcussen has been made aware of this but has failed to address the issue. (<u>Id.</u> at 17.)

---

[5] Plaintiff couches this as a due process claim rather than an Eighth Amendment claim. This does not change the analysis given the paucity of Plaintiff's factual allegations.

To succeed on a § 1983 claim for inadequate medical care in violation of the Eighth Amendment, a prisoner must show that (1) he has an objectively serious medical need, involving a substantial risk of serious harm if not properly treated, and (2) the prison official had subjective awareness of his need and consciously disregarded the substantial risk of serious harm. Farmer, 511 U.S. at 837; Estelle, 429 U.S. at 106. Here, the Complaint does not identify the medical condition or conditions for which Plaintiff sought treatment nor the nature of the treatment sought. Plaintiff also fails to name the individuals who allegedly acted in a retaliatory manner or describe the retaliatory actions of any Defendant. As such, his allegations on this point are conclusory and insufficient "to show that he has a plausible claim for relief." Sanchez, 590 F.3d at 41 (citing Iqbal, 129 S. Ct. at 1949).

F. Denial of Access to Legal Materials and Phone Calls

Plaintiff complains that he has been denied proper access to legal services and materials. Specifically, he asserts that Defendants Wall, Bailey, Weeden and others have denied him prompt legal services and proper materials to petition the court (Compl. 20), as well as the right to make telephone calls to attorneys and other government officials (id. at 14). Plaintiff further complains that Defendant Eddie Souza has not allowed him to access "proper available legal materials and supp[l]ies,

legal machines such as photo copy [sic] and typewriter[s]."
(Id. at 21.)

Prisoners have a constitutional right of access to the court that requires "prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). However, in order to recover, a plaintiff must demonstrate that he suffered an actual injury, such as the frustration of a nonfrivolous legal claim, as a result of the shortcomings in access to legal assistance. Lewis v. Casey, 518 U.S. 343, 351-52 (1996). Thus, it "follows that the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher v. Harbury, 536 U.S. 403, 415 (2002).[6]

As the Complaint fails to allege that Plaintiff was hindered in his efforts to pursue a valid legal claim or to defend himself with respect to a criminal charge, the access to court and right to counsel claims fail.

---

[6] The Sixth Amendment right to counsel does not apply in civil actions. Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000).

G.  Mail Tampering

The Complaint alleges that Defendants Duaray and Dennette have "delayed or destroyed" Plaintiff's incoming mail unreasonably and that unnamed persons, presumably Duaray and Dennette, have obstructed and opened his outgoing mail in a retaliatory manner, in violation of the First and Fourteenth Amendments.  (Compl. 9-10, 21.)  Plaintiff also claims that Defendants Wall, Bailey, Weeden and Auger have permitted these correctional officers to tamper with Plaintiff's mail (and that of other HSC prisoners).  (Id. at 12, 18.)

It is well established that "inspection of an inmate's mail may implicate First Amendment rights."  Felton v. Lincoln, 429 F. Supp. 2d 226, 242-43 (D. Mass. 2006) (citing Stow v. Grimaldi, 993 F.2d 1002, 1003-04 (1st Cir. 1993)).  However, prison officials may impose a restriction on incoming mail if the restriction is reasonably related to a legitimate penological interest, Thornburgh v. Abbott, 490 U.S. 401, 413 (1989), and on outgoing mail if the restriction is in furtherance of a substantial governmental interest unrelated to the suppression of expression and no greater than necessary to achieve such goal, Procunier v. Martinez, 416 U.S. 396, 413, (1974), overruled on other grounds by Thornburgh, 490 U.S. at 413.  The Supreme Court has recognized "security, order, and rehabilitation" of inmates as substantial governmental interests

justifying "restraints on inmate correspondence." Procunier, 416 U.S. at 413; see also Stow, 993 F.2d at 1004.

Here, although Plaintiff states that Duaray and Dennette's delay or destruction of his incoming mail was "unreasonable" and that their screening of his outgoing mail was "in a retaliatory manner," he fails to identify any specific pieces of mail affected or to allege any specific facts supporting such bald assertions or otherwise suggesting that the Defendants' actions were not related to the legitimate penological concerns of security, order and rehabilitation of inmates.

Moreover, to the extent Plaintiff contends that the inspection of his legal mail interfered with his access to courts, as discussed above, he fails to state that such action impeded any viable legal claim. See Lewis, 518 U.S. at 351-52; Jutras v. Graham, No. 09-151, 2009 WL 1744588, at *5 (D.N.H. June 19, 2009) (holding that prisoner's allegations regarding tampering with legal mail failed to state a claim because, in part, "[he] has not indicated that he was harmed in any way by the actions alleged"). Accordingly, Plaintiff's allegations regarding mail tampering fail to state a claim.

H. Equal Protection Claims -- Phone Privileges and Visits

Plaintiff alleges that Defendants Wall, Bailey and Weeden allow other High Security inmates (in Modules A, B and C) greater phone privileges, more visits from friends and

relatives, and more recreational privileges when the weather is bad than Plaintiff in solitary confinement. (Compl. 13-15.) These allegations constitute an attempt to state a Fourteenth Amendment Equal Protection claim.

"The essence of the Equal Protection Clause is that government should treat similarly situated persons alike." Street v. Maloney, 991 F.2d 786, at *4 (1st Cir. 1993) (Table). In the prison context, to establish an Equal Protection claim not based on a suspect classification, an inmate must demonstrate that the differential treatment was arbitrary and capricious rather than based on a rational relationship to a legitimate state goal. See Nadeau v. Helgemoe, 561 F.2d 411, 416 (1st Cir. 1977) ("The state's power to draw distinctions between [protective custody] prisoners and the general population . . . is always subject to the constitutional requirement that the distinction be rational rather than arbitrary and capricious.").

Plaintiff's allegations concerning his access to phone services, visits and recreation do not set forth actionable violations. By his own admission, he is being held in solitary confinement in 23-hour lockdown, and thus is not similarly situated to prisoners not held in solitary confinement.

Further, it is clear that stricter restrictions on phone, visitation and recreation privileges of inmates in solitary

confinement compared to their fellow inmates in the general HSC population are rationally related to legitimate penological concerns, see Street, 991 F.2d at *4, and the Complaint sets forth no allegations suggesting otherwise. See Parks v. Town of Hampton Falls, N.H., No. 07-173, 2007 WL 3101358, at *5 (D.N.H. Oct. 17, 2007) (holding that prisoner's allegations that affording pretrial detainees housed in the punitive unit less out-of-cell and recreation time than inmates in the general prison population failed to state a claim where there were no allegations that the difference in treatment was not based on a legitimate penological concern). Therefore, Plaintiff's allegations regarding disparate phone, visitation and recreation privileges do not state a claim upon which relief may be granted.

III. CONCLUSION

In view of the foregoing considerations, this Court finds that none of the allegations in the Complaint state a claim on which relief may be granted. Accordingly, such claims are hereby DISMISSED as against all Defendants.

Plaintiff's IFP application and his motion for appointment of counsel are DENIED as moot.

IT IS SO ORDERED:


/s/ William E. Smith
William E. Smith
United States District Judge
Date: August 1, 2011